1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LISA MARIE PEREZ,                      No.  2:19-cv-0294 DAD AC P

12                   Petitioner,

13         v.                                ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14    MIKE PALLARES, Warden,

15                   Respondent.

16

17          Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the first amended petition,

19    ECF No. 7, which brings fourteen claims challenging petitioner's 2018 conviction for assault with

20    a deadly weapon and related offenses.  Respondent has answered, ECF No. 67, and petitioner has

21    filed a traverse, ECF No. 75.

22                                      BACKGROUND[1]

23    I.      Proceedings in the Trial Court

24          A.  Preliminary Proceedings

25             1.  Arrest and Initial Charges

26          Petitioner was arrested in Colusa County on February 2, 2016, for allegedly stabbing her

27    _____

28    [1] This summary is adapted from the opinion of the California Court of Appeal, ECF No. 66-15.

husband on that day.  She was released on her own recognizance three days later with a promise to appear on March 1, 2016.  On February 26, defendant was charged with assault with a deadly weapon and vandalism.  She was arraigned on March 1, and the court appointed a public defender to represent her.

On March 23, 2016, the prosecutor filed a first amended complaint alleging assault with a deadly weapon, corporal injury to a spouse, and vandalism.  That same day, petitioner appeared with counsel and waived a further reading and advisement of rights, entered pleas of not guilty on the amended complaint, and waived further arraignment.  She did not waive time for the preliminary hearing, which was set for April 6.

2.  Preliminary Hearing and Pretrial Motions

On the date of the preliminary hearing, defense counsel declared a conflict and asked to be relieved because petitioner had secretly taped their confidential conversations, posted them online, and provided the court with a transcribed copy of the communications as part of a pro se motion petitioner filed pursuant to People v. Marsden, 2 Cal.3d 118 (1970).  After relieving counsel, the court granted petitioner's request to represent herself.

Petitioner requested a continuance and personally waived time for the preliminary hearing.  The court continued the preliminary hearing to May 11, 2016, with a confirmation hearing on April 20.

At the April 20, 2016, confirmation hearing, petitioner stated she had not yet obtained discovery from the prosecutor after having been told she had to pay for copies.  The court ordered the prosecutor to provide petitioner with the discovery by the end of the day free of charge, and the prosecutor made arrangements to have the discovery provided to petitioner that day.

The following day petitioner filed an "Omnibus Motion," seeking to dismiss the action because she was not taken to a magistrate within 48 hours of her warrantless arrest, and because the prosecutor had failed to file an information within 15 days of holding her to answer (even though the preliminary hearing had not yet been held).

On May 3, 2016, petitioner filed a motion under Pitchess v. Superior Court, 11 Cal. 3d 531 (1974), to discover the personnel records of the responding officers.  She also filed a motion

to obtain discovery, including police body camera video, which she argued the prosecutor had wrongly withheld.  On May 11, she filed a motion for exclusionary sanctions and dismissal based on the purported discovery violations.

On May 11, 2016, the date set for the preliminary hearing, the court ruled that petitioner's motions were not properly noticed or served, and it declined to consider them.  Petitioner agreed to waive time to continue the preliminary hearing to June 8.

On May 23, 2016, petitioner renewed her <u>Pitchess</u> motion, her motion to obtain discovery, her Omnibus Motion, and her motion to impose dismissal sanctions for the alleged discovery violations.  Both the City of Colusa Police Department and the County of Colusa opposed the <u>Pitchess</u> motion, arguing the motion was untimely served, overbroad, and failed to establish good cause for the discovery.

On June 8, 2016, the court considered petitioner's numerous motions.  The trial court found that the motions were not properly noticed and served.  It also found that the district attorney had provided discovery to petitioner, and that he only had to provide reasonable accommodations for defendant to view the police body camera videos but was not required to produce copies of the videos.  The court denied the sanction motion related to the alleged discovery violations.

After denying petitioner's motions, the court held the preliminary hearing.  The victim, City of Colusa Police Officer Lorman, and Colusa County Sheriff's Sergeant Elden Tamez testified.  The court held petitioner to answer.  Thereafter, petitioner personally waived time for arraignment and trial setting.

3.  <u>Information</u>

On July 5, 2016, the prosecution filed an information charging petitioner with assault with a deadly weapon, corporal injury on a spouse, and vandalism of property valued over $400.  The information further alleged that petitioner personally used a deadly weapon and personally inflicted great bodily injury during the corporal injury offense.

On July 6, 2016, petitioner received a copy of the information, and waived further arraignment and advisement of rights.  She pleaded not guilty to the charges and denied the

1   special allegations.  Petitioner personally entered a general time waiver of her right to be tried

2   within 60 days of her not guilty pleas.  Trial was set for November 2016.

3           4.   Additional Pretrial Motions

4   On August 10, 2016, petitioner filed her third Omnibus Motion, raising the same issues as

5   before.  She also renewed her Pitchess and discovery motions.[2]

6   On October 19, 2016, the court denied petitioner's Pitchess motion, finding that she failed

7   to establish good cause for discovering the requested police personnel records.  The court also

8   denied petitioner's third discovery motion, and her Omnibus Motion on the same grounds as

9   before.

10   On November 2, 2016, petitioner requested a trial continuance.  She confirmed her

11   previous entry of a general time waiver, and agreed to continue waiving time.  Trial was reset for

12   February 22, 2017.

13           5.   New Charges in Butte County

14   In December 2016, the prosecutor sought to revoke petitioner's own recognizance release

15   because petitioner was in custody in Butte County for allegedly stabbing her husband with an ice

16   pick during a dispute in which she called him a "snitch'" in relation to the Colusa County case.

17   The court found good cause to revoke petitioner's own recognizance release and set bail.

18           6.   Further Pretrial Proceedings

19   On January 27, 2017, petitioner filed an omnibus motion to dismiss for police misconduct,

20   destruction of evidence, and failure to preserve exculpatory evidence.  The motion was denied.

21   At the hearing on the omnibus motion to dismiss, on February 1, 2017, petitioner represented that

22   law enforcement in Butte County had destroyed or taken her copy of the discovery in the Colusa

23   County case when they searched her home.  At the court's request, the prosecutor agreed to

24   provide petitioner with a duplicate copy of the previously disclosed discovery materials.  The

25   omnibus motion was denied.

26   On February 9, 2017, the date set to confirm the trial, petitioner failed to appear.  The

27

28   [2]  During this time, petitioner brought numerous other motions unrelated to the claims presented in habeas.

court in Butte County had declared a doubt about petitioner's competency and suspended criminal proceedings under Cal. Penal Code § 1368.  Petitioner remained in custody in Butte County. Although the Colusa County court signed a production order requesting that Butte County transport petitioner to Colusa County for the trial readiness conference, Butte County did not comply with the request (possibly due to the suspension of criminal proceedings in that county). Given petitioner's absence, the court vacated the trial date, set bail at $500,000, and ordered a bench warrant for petitioner's arrest.

### 7.   Purported Revocation of Time Waiver

On March 23, 2017, the court received a letter from petitioner purportedly withdrawing her time waiver and requesting to be tried within 60 days.  Petitioner mailed another letter to the court on April 6, stating that she had revoked her time waiver.  As directed by the court, the clerk responded that because she failed to appear for the trial confirmation date on February 9, 2017, a bench warrant had been ordered and was active, time was not running, and no further court dates were scheduled.

On May 1, 2017, petitioner lodged a motion to dismiss the action, claiming her statutory right to a speedy trial was violated.  Given the pending warrant, the court struck the motion.

### 8.   Convictions in Butte County Case

Petitioner was eventually deemed competent to stand trial in Butte County, and on March 13, 2018, was found guilty of assault with a deadly weapon and corporal injury on a spouse. Allegations of personally inflicting great bodily injury, use of a deadly weapon, and committing the offenses while released on her own recognizance in the Colusa County case were also found true.  In April 2018, petitioner was sentenced in the Butte County case to seven years in state prison.  A two-year term for the enhancement for committing the crimes while released in the Colusa County case was stayed pending the outcome of the Colusa County trial.

### 9.   Further Pretrial Motions

Following her conviction and sentence in Butte County, petitioner returned to Colusa County superior court on June 26, 2018, and was arraigned on the warrant for failing to appear. Petitioner did not agree to waive time, and the following day trial was set for August 22, 2018.

On June 28, 2018, petitioner filed another motion to dismiss on speedy trial grounds under Cal. Penal Code § 1382.  The prosecutor argued in opposition that section 1381 rather than section 1382 governed; the prosecutor asked the court to advance the trial date to comply with the 90-day deadline in section 1381.  Agreeing with the prosecution, the court set trial for August 7, 2018.

Petitioner also filed a motion to dismiss for failure to disclose or preserve exculpatory evidence, citing Brady v. Maryland, 373 U.S. 83 (1963).  The court denied the motion, finding no Brady violation.

On July 3, 2018, petitioner filed a motion for appointment of a neuropsychologist to evaluate the victim and the effects of his alleged brain damage and mental illness to support her defense that he hallucinates and misperceives his surroundings when he fails to take medication. The court denied the motion.

Also on July 3, 2018, petitioner filed a motion to suppress the victim's "involuntary statements" in Butte County.  Two days later, petitioner filed a motion to strike enhancements. The court later denied the motions.

On July 6, 2018, the prosecutor filed an Evidence Code section 402 motion seeking to admit evidence of defendant's Butte County stabbing attack on the victim under Evidence Code section 1109, among other provisions.  In opposing the motion on July 17, petitioner denied having stabbed the victim and argued that his statements to Butte County law enforcement implicating her had been coerced.

At the trial readiness conference on July 25, 2018, the court appointed standby counsel, explaining that he would sit in court to observe the trial, but that he would not consult or otherwise assist petitioner.  His role was to familiarize himself with the case in the event petitioner's pro per status was terminated.

The court denied petitioner's renewed motion to dismiss for failure to disclose exculpatory evidence under Brady, which duplicated defendant's earlier motion that the court denied.

On July 25, 2018, petitioner also filed a non-statutory motion to dismiss based on the

purported deprivation of a substantial right at the preliminary hearing, again claiming that the prosecutor failed to comply with <u>Brady</u>'s discovery obligations and that the trial court erroneously denied her previous <u>Pitchess</u> and discovery motions.  The court later denied the motion.

On July 30, 2018, petitioner filed another motion to suppress the victim's statements to law enforcement and emergency personnel in Butte County, asserting law enforcement unlawfully tortured and coerced her husband into implicating her.  The court considered the motion and denied it.

Also on July 30, 2018, petitioner filed a motion to bifurcate the jury trial, arguing that her prior conviction in Butte County should not be admitted during the Colusa County trial.  Because the information did not allege a prior conviction, the court found the motion moot.

On August 3, 2018, petitioner filed (1) an Evidence Code section 402 motion to suppress the victim's statements in Butte County as well as the facts underlying the Butte County conviction, and (2) a motion to dismiss for due process violations, arguing, among other things, that the delay in prosecution prejudiced her, and that her probable cause hearing was not held within 48 hours of her arrest.  The court found that these issues had previously been addressed or were without merit.

Trial began on August 7, 2018.  Petitioner represented herself.

B.  <u>The Evidence Presented at Trial</u>

1.  <u>Prosecution Case</u>

On February 2, 2016, petitioner and her husband were staying at the Colusa Motel. During the day they argued, and the victim left the motel to go fishing.  Upon his return, petitioner would not let him back into the motel room.

At some point, petitioner called 911 to report that her husband would not stop knocking on the window to the room.  She said that she was "about ready to stab the motherfucker for real." A recording of the 911 call was played for the jury.  During the call, petitioner stated that she was in room 109 at the Colusa Motel and she identified herself as "Storm."

Petitioner eventually let her husband in, and he went into the bathroom; he did not see

7

anyone else besides petitioner in the room at that time.  While he was the bathroom, someone began stabbing a knife through the bathroom door.  The victim grabbed the door handle and tried to keep the door closed.  During the struggle the victim's arm was slashed, causing it to bleed.  He escaped by jumping out the bathroom window, injuring his leg in the fall.  He sought help in the motel manager's office, and the motel manager called police.  The victim hid inside the motel carport until police arrived.

City of Colusa Police Officer Larry Lorman first responded to room 109 at the Colusa Motel around 6:00 p.m. after receiving a report of a woman threatening to stab her husband.  Lorman spoke with petitioner through the motel room window; the officer observed a hunting knife tucked into petitioner's waistband.  Petitioner said that she and her husband had a disagreement over ownership of a pickup truck.  At the time, Lorman did not notice any injuries on petitioner.  He did not see the victim, and he left the motel.

Officer Lorman returned to the Colusa Motel approximately 40 minutes later in response to a report of a wounded man.  Lorman located the victim outside the motel manager's office underneath a carport.  Lorman saw that the victim's right arm was injured.  When he asked the victim if someone stabbed him, the victim initially responded "yeah," and identified the person who stabbed him as "Storm."  When Lorman asked him again who stabbed him, he said he did not know.

After interviewing the victim, Officer Lorman returned to room 109 and loudly knocked on the door, announcing his presence.  No one answered.  Lorman then obtained the manager's key to enter the room.  After knocking and announcing again without any response, Lorman opened the door and saw petitioner lying on one of the motel beds feigning sleep.  The room had been destroyed; mirrors and lamps were broken, the bathroom door and room walls were damaged, and there was blood everywhere.  Petitioner had blood on her face and clothing, and there was a blood stain on the bed where she lay.

Officer Lorman asked petitioner whether she was injured, and she did not report any injuries.  He noticed that petitioner no longer had the hunting knife he had seen earlier, although she was still wearing the sheath around her waist.  The knife blade was eventually located on the

bathroom floor; the handle had been broken off and was found under the nightstand.  The broken knife matched the sheath found on petitioner.

Because Officer Lorman had already contacted the victim, who was bleeding from his injury, and petitioner did not appear to be injured, Lorman did not collect any blood or DNA samples from the scene.  He arrested petitioner.  During the arrest, petitioner was very hostile and physically combative.  She told Lorman that she did not do anything, and said that "[s]omebody else was involved in this shit," although she never identified the alleged third person.

The victim was admitted to the emergency room for his injuries.  The emergency physician listed his "chief complaint" as "Patient stabbed by a knife his wife was using to cut him.  He suffered a positive for right forearm laceration and positive for left-knee pain after jumping out a window."  Nothing in the medical records indicated the physician obtained the complaint information from anyone other than the victim.  The victim's arm wound took five stitches to close.

Nurse Cheryl Bird escorted the victim from the hospital upon discharge.  In response to her statement that "[i]t look[ed] like [he had] had a rough night," the victim responded, "Yeah, I got stabbed by my wife, and now I'm getting kicked out of the hospital."

2. <u>Defense Case</u>

Petitioner's theory of defense was that a third person, a man with whom she intended to have a sexual encounter that day at the motel as part of her "swinger" lifestyle, had attacked her and then stabbed the victim through the bathroom door.  Petitioner did not identify this person, but argued that DNA testing of the blood in the motel room would have done so.  There was no evidence of a third person in the motel room at the time of the stabbing.

Petitioner called City of Colusa Chief of Police Joshua Fitch, who testified that he had looked up petitioner and the victim following a complaint the city had received from them regarding an incident at a state park.  At the scene of the stabbing, body camera video showed the chief commenting that petitioner and her husband were a "pain in the ass . . . ."  While he acknowledged that securing a crime scene and gathering evidence were police functions, he said that the decision of whether to take blood samples from a crime scene depended on the

circumstances.

Petitioner also called the victim as a witness for the defense.  He denied ever telling the nurse that petitioner had stabbed him, and he said that he never told police she had stabbed him.

Petitioner did not testify.

### 3.   Closing Arguments

The prosecutor argued that the evidence showed petitioner called 911 to report that she intended to stab the victim, that she had a knife on her when Officer Lorman first responded to the 911 call, that she was the only one in the motel room when the victim went into the bathroom, and that the knife she had on her was used to repeatedly stab through the bathroom door, slicing the victim's arm during the melee.  Counsel emphasized that even though the victim did not identify his attacker to police, he reported to a doctor and a nurse that petitioner had stabbed him.

Petitioner argued that the blood in the motel room that the police failed to collect would have shown that a third person stabbed the victim through the bathroom door.

### C.   Verdict

After deliberating for approximately 45 minutes, the jury found petitioner guilty on all counts, and found the deadly weapon and great bodily injury allegations true.  Following the verdicts, petitioner requested that her standby counsel represent her at sentencing. The court granted this request.  Petitioner waived time for sentencing to September 10, 2018.

### D.   Post-trial Motions

On August 27, 2018, petitioner filed a Marsden motion to relieve counsel because he refused to file various motions that she requested, including a notice of appeal (which was premature since defendant had not yet been sentenced); she requested to represent herself again. On the date set for sentencing, the court granted petitioner's request to represent herself, and relieved counsel.  Petitioner then agreed to waive time for sentencing so she could file a motion for new trial.  Sentencing was tentatively reset for October 15, 2018, and later reset for October 22, 2018.

In September 2018, petitioner filed an opposition to the probation officer's presentence report, and a motion to correct the probation report.  She also filed motions alleging inaccuracies

in the transcripts and requesting that they not be given to the jury, to set aside the guilty verdicts and dismiss all charges against her, and to obtain juror questionnaires.

In October 2018, petitioner filed motions requesting the low term and concurrent sentences.  She also filed a statement in mitigation, which included several affidavits from the victim.

The prosecution filed a "Omnibus Opposition" to petitioner's numerous post-trial motion, arguing that the motions were baseless and frivolous.

On October 17, 2018, petitioner filed a motion for new trial based on alleged judicial and prosecutorial misconduct and insufficient evidence to support the verdicts.  That same day, petitioner filed a motion to correct the opening statement transcript, claiming it was inaccurate in several respects.

E.   Sentencing

At the sentencing hearing on October 22, 2018, the court addressed petitioner's post-trial motions, denying most of them.  The court imposed a new aggregate sentence in both the Colusa County case and the Butte County case with count II of the Colusa County case (the corporal injury conviction) serving as the principal term.  The court imposed the upper term of four years for the corporal injury offense, plus a consecutive three-year low term for the great bodily injury enhancement, plus a consecutive one-year term for the personal use of a deadly weapon enhancement.  The court imposed a consecutive one-third the midterm of eight months for the vandalism offense, and imposed and stayed a one-year sentence on the assault offense.

In the Butte County case, the court imposed a consecutive one-year term for the corporal injury on a spouse offense, plus one year for the great bodily injury enhancement, four months for using a deadly weapon, and two years for committing the offense while released on her own recognizance in the Colusa County case.  The court imposed and stayed a one-year term for the assault offense.

Petitioner's total aggregate sentence was 13 years in state prison.

////

////

1    II.    Post-Conviction Proceedings

2         Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

3    conviction on June 17, 2020.  ECF No. 66-15.  The California Supreme Court denied review on

4    August 26, 2020.  ECF No. 66-18 at 1.

5         During the pendency of direct review petitioner filed two petitions for writ of habeas

6    corpus in the California Court of Appeal, both of which were denied.  ECF Nos. 66-19, 66-20.

7    Petitioner then filed a habeas petition in the California Supreme Court, which was denied on July

8    21, 2021, with citation to In re Clark, 5 Cal.4th 750 (1993) and In re Waltreus, 62 Cal.2d 218

9    (1965).  ECF No. 66-21.

10         STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

11         28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

12   1996 ("AEDPA"), provides in relevant part as follows:

13        (d) An application for a writ of habeas corpus on behalf of a person
14        in custody pursuant to the judgment of a state court shall not be
          granted with respect to any claim that was adjudicated on the merits
15        in State court proceedings unless the adjudication of the claim –

16        (1) resulted in a decision that was contrary to, or involved an
          unreasonable application of, clearly established Federal law, as
17        determined by the Supreme Court of the United States; or

18        (2) resulted in a decision that was based on an unreasonable
          determination of the facts in light of the evidence presented in the
19        State court proceeding.

20         The statute applies whenever the state court has denied a federal claim on its merits,

21   whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

22   (2011).  State court rejection of a federal claim will be presumed to have been on the merits

23   absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

24   489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

25   decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

26   may be overcome when there is reason to think some other explanation for the state court's

27   decision is more likely."  Id. at 99-100.

28         The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

12

principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

(2013).

A state court decision is "contrary to" clearly established federal law if the decision

"contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

was incorrect in the view of the federal habeas court; the state court decision must be objectively

unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

must determine what arguments or theories may have supported the state court's decision, and

subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

## DISCUSSION

I.      Claim One: Denial of a Speedy Trial

A.      Petitioner's Allegations

Petitioner alleges that she was not arraigned within 48 hours.  ECF No. 7 at 5.  Although

she repeatedly waived time after her arraignment and prior to her arrest on the Butte County

13

charges, at that point she began demanding a speedy trial in the Colusa County case.  Her various

motions for a speedy trial were denied in violation of her Sixth and Fourteenth Amendment

rights.  Id. at 5-6.  She alleges, "I tried continuously to get my trial in Colusa County taken care of

before my Butte County trial…. Because of the delay of the trial, faded memories upon the

witnesses happened." Id. at 6.

                    B.   The Clearly Established Federal Law

                          1.   Initial Appearance

The Fourth Amendment requires a judicial determination of probable cause as a

prerequisite to extended restraint of liberty following arrest.  Gerstein v. Pugh, 420 U.S. 103, 114

(1975).  The standard is the same as for arrest—probable cause to believe the suspect has

committed a crime—and can be determined reliably by a magistrate without an adversary

hearing.  Id. at p. 120.  Accordingly, with certain exceptions, a defendant must be taken before a

judicial officer within 48 hours of his or her arrest for a probable cause determination.  County of

Riverside v. McLaughlin, 500 U.S. 44, 56-57 (1991).  Illegal detention, however, does not void a

subsequent conviction.  Gerstein, 420 U.S. at 119 ("a conviction will not be vacated on the

ground that the defendant was detained pending trial without a determination of probable cause").

                          2.   Speedy Trial

The United States Constitution provides that criminal defendants have "the right to a

speedy and public trial." U.S. Const., amend. VI; see also Doggett v. United States, 505 U.S.

647, 651 (1992).  The determination of whether a defendant's constitutional right to a speedy trial

was violated is a fact-based inquiry that requires balancing various factors of the case including:

(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and

(4) prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  The length of delay

serves as a "triggering mechanism," and if there is not a delay which is presumptively prejudicial,

then there is no reason to consider the other balancing factors at all.  Id.  Even where the length of

delay requires balancing of all the factors, there is no constitutional violation absent prejudice

from the delay.  Id. at 536.  In considering prejudice to the defendant, the court must look to three

specific interests that the right to a speedy trial is meant to protect: (1) to prevent oppressive

14

1  pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the

2  possibility that the defense will be impaired.  Id. at 532.  The final factor is to be given the most

3  weight in the analysis.  Id.

4          C.  The State Court's Ruling

5          This claim was raised on direct appeal.  Because the California Supreme Court denied

6  discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

7  decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

8  501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).  The appellate court's

9  discussion of the issue is set forth at ECF No. 66-15, pp. 16-24, which is incorporated here by

10  reference.

11          1.  Delayed Initial Appearance

12          As to the timing of petitioner's initial appearance, the court found that the presumptive 48-

13  hour limit set by California law and required by the Fourth Amendment was not met.[3]  However,

14  "the law does not require a reversal of a conviction unless [petitioner] shows that through such

15  wrongful conduct she was deprived of a fair trial or otherwise suffered prejudice as a result of the

16  delay."  Id. at 18.

17
18          In this case, the trial court properly denied defendant's motion to
        dismiss because defendant failed to establish any prejudice from the
19          delay. Defendant was arrested around 7:30 p.m. on February 2,
        2016, after court business hours. While Officer Lorman prepared a
        statement of probable cause for the arrest that same day, nothing in
20          the record shows defendant was taken before a magistrate for a
        probable cause determination within 48 hours of her arrest. Instead,
21          she was released from custody on February 5 with a promise to
        appear on March 1. A complaint was filed against her on February
22          26 and she was arraigned four days later on March 1. [Footnote
        omitted.]

23          Nothing in the record suggests defendant confessed while held in
24          jail, or that she was otherwise prejudiced from the delay in holding
        a probable cause hearing. Once the complaint was filed, she was
25          promptly arraigned and advised of her rights, and was appointed
        counsel to protect her interests. She was held to answer after a
26          preliminary hearing in which the magistrate found probable cause
        to believe she had committed the alleged crimes. Under these

27
_____

28  [3]  Petitioner was arrested on February 2, 2016, after court business hours.  She was released on
her own recognizance on February 5, 2016.

circumstances, we conclude that even if defendant's right to be promptly taken before a magistrate following her arrest was violated, she did not suffer any prejudice from the violation and the trial court properly denied her motion to dismiss on that basis.

ECF No. 66-15 at 18-19.

### 2. Speedy Trial

Petitioner's motions to dismiss for failure to timely try the case were based on California law, and the appellate court found no error in their denial. The general statutory requirement of trial within 60 days absent waiver, Cal. Penal Code § 1381, was not violated because petitioner had entered a valid waiver. While the statute provides for withdrawal of waiver, § 1381(a)(2)(A), petitioner did not comply with the procedural requirements for a valid waiver. Once petitioner was charged in the Butte County case, she had a statutory right to right to trial in Colusa County within 90 of a notice and demand for trial. Cal. Penal Code § 1382. She was tried within 90 days of her notice. ECF No. 66-15 at 21-23.

The court continued:

In any event, even if we assume defendant's right to a speedy trial was violated, because she has been tried and convicted, and no charges are pending against her, it is too late to relieve her of the delay in bringing her to trial. (*People v. Luu* (1989) 209 Cal.App.3d 1399, 1404.) "Thus, even where a speedy trial statute specifically provides for dismissal as a remedy, its violation is not reversible error on appeal in the absence of a showing of prejudice." (*Ibid.*)

Here, defendant makes no attempt to establish prejudice from any purported delay. Nor could she. All of the pertinent witnesses testified at trial, including the victim, the arresting officer, the motel manager, the emergency room physician who treated the victim, and the nurse who escorted the victim from the hospital upon discharge. Pictures of the crime scene and the victim, defendant's 911 call, and police body camera evidence of the motel room were also shown to the jury. Given the above, even assuming an unreasonable delay occurred, defendant suffered no prejudice.

Id. at 23-24.

### D. Objective Reasonableness Under § 2254(d)

The appellate court's adjudication of speedy trial issues under California law is not reviewable here. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal habeas court may not review state court determinations of state law issues). The court noted the federal constitutional

16

1    dimensions of the issues, and it identified the correct principles of federal law.  ECF No. 66-15 at

2    17, 21.  Nothing in the opinion constitutes an unreasonable application of those principles.

3         Petitioner alleges here that it was unconstitutional not to arraign her within 48 hours of

4    arrest, ECF No. 7 at 5, but the applicable constitutional rule is that a judicial determination of

5    probable cause must (in most cases) be made within 48 hours in order to support continued

6    detention.  Petitioner was apparently held 72 hours or less, then was released on her own

7    recognizance; she was out of custody for her subsequent arraignment.  The appellate court

8    correctly noted that petitioner had identified no prejudice to her defense from the extended

9    detention.  More importantly for federal habeas purposes, the U.S. Supreme Court has clearly

10   held that violation of the 48-hour rule—or any other pretrial detention that violates the Fourth

11   Amendment—does not invalidate a subsequent conviction.  See Gerstein, 420 U.S. at 119.

12   Accordingly, federal habeas relief is unavailable.

13        Regarding the timeliness of petitioner's trial, the state appellate court again rested its

14   decision on state statutory grounds while acknowledging the governing federal constitutional

15   principle.  See ECF No. 66-15 at 21.  The court's implicit denial of the federal claim was not

16   objectively unreasonable.  Even assuming a delay sufficient to trigger balancing under Barker v.

17   Wingo, petitioner cannot prevail without a concrete showing of prejudice.  Barker, 407 U.S. at

18   532, 536.  She has presented no specific facts showing her defense was impaired by the passage

19   of time.  Her general allegation of faded witness memories is insufficient to state a prima facie

20   claim.  See Jones v. Gomez, 66 F.3d 199, 204-05 & n.1 (9th Cir. 1995) (conclusory allegations

21   unsupported by statement of specific facts insufficient to support habeas relief), cert. denied, 517

22   U.S. 1143 (1996).  Accordingly, the claim fails under any standard of review.

23   II.      Claim Two: Failure to Preserve Exculpatory Evidence

24           A.  Petitioner's Allegations

25        Petitioner alleges that her due process rights were violated because "the only exculpatory

26   evidence was not taken from the crime scene."  ECF No. 7 at 8.  The police acted in bad faith by

27   not collecting blood samples even though petitioner told the arresting officer that someone else

28   had committed the crime.  The evidence was destroyed by motel employees because police did

not preserve it.  Id. at 8-10.  The trial court's denial of petitioner's various motions regarding this issue resulted in a deprivation of due process.[4]

### B.  The Clearly Established Federal Law

Due process "requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment."  California v. Trombetta, 467 U.S. 479, 480 (1984); see also Brady v. Maryland, 373 U.S. 83 (1963).  The duty to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense."  Trombetta, 467 U.S. at 488.  This means evidence with "exculpatory value that was apparent before the evidence was destroyed" and "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  Id. at 489.  "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process."  Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

### C.  The State Court's Ruling

This claim was presented on appeal, and the opinion of the California Court of Appeal is the subject of federal habeas review.  See Ortiz, 704 F.3d at 1034.  The appellate court identified Brady, Trombetta and Youngblood as the governing federal authorities, ECF No. 66-15 at 29-30, and ruled in pertinent part as follows:

> We… conclude that defendant has failed to show the prosecutor did not comply with his disclosure obligations under Brady, or that law enforcement acted in bad faith by failing to preserve and test samples of the blood found at the crime scene. The trial court thus properly denied defendant's many discovery motions based on those arguments.
>
> As Officer Lorman and Chief Fitch explained at trial, blood samples are sometimes but not always collected from crime scenes. Whether such evidence is collected depends on the circumstances. In this case, it was not collected because the victim, who was bleeding, was known, defendant appeared to be the only other person in the room with him at the time of the stabbing, defendant had earlier called police to report that she was about to stab her

---

[4]  Petitioner also alleges in passing that her rights were violated by the trial court's denial of an expert witness to testify to her husband's psychosis.  Id. at 8-9.  This is the substance of Claim Eight and is addressed below.

husband, and neither the victim nor defendant ever identified what other person was allegedly involved. Because Lorman did not see any visual injuries on her that would have caused the blood, defendant did not respond that she was injured, and the victim did have such an injury, the officer concluded that testing the blood for DNA was not necessary given the circumstances. That conclusion was reasonable, and, at the very least, does not show that the officers acted in bad faith by failing to preserve and test the blood. [Footnote omitted.]

There was also no credible evidence that another person, besides the victim and defendant, was in the room at the time of the stabbing. Defendant did not testify, and any of her questions or statements during trial that implied a third person was present were not evidence. (*People v. Arnold* (1926) 199 Cal. 471, 486 [opening "statement is not evidence, and no jury would accept it as facts proved"]; CALCRIM No. 104 ["Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys will discuss the case, but their remarks are not evidence. Their questions are not evidence. . . . Do not assume that something is true just because one of the attorneys asks a question that suggests it is true."].) Given the above, it is not reasonably probable that testing the blood would have revealed the presence of a third person thereby resulting in a different outcome at trial. The evidence, then, was not "material" within the meaning of *Brady*. (*United States v. Bagley, supra*, 473 U.S. at p. 682.)

The trial court properly found no *Brady* violation, and no bad faith failure to preserve evidence. Defendant's discovery motions were correctly denied.

ECF No. 66-15 at 32-33

### D.  Objective Reasonableness Under § 2254(d)

The state court identified the clearly established federal law that applies to this claim, and it applied that law reasonably.  At the time of the police response to the stabbing, there was no apparent exculpatory value to the blood in the motel room because the victim was the only person at the scene with apparent wounds.  Even assuming the blood and related DNA could be considered potentially useful evidence, in that it theoretically might have supported the defense theory that a third party was in the room and contributed blood or other DNA to the scene, there is no due process violation without bad faith on the part of police.  See Youngblood, 488 U.S. at 58.  The potential usefulness of the blood evidence would not have been obvious to responding

////

////

19

officers without credible evidence of a possible third party perpetrator,[5] so their failure to collect the evidence cannot have been motivated by any intent to hurt petitioner's defense.  The trial testimony of Officer Lorman and Chief Fitch confirmed their lack of bad faith.  Petitioner has presented no independent evidence which plausibly indicates that this testimony was untruthful.  That the officers may have had prior encounters with or opinions about petitioner and her husband is insufficient, without more, to support such an inference.

Because nothing in the appellate court's opinion constitutes an objectively unreasonable application of Brady, Trombetta or Youngblood, relief is barred by § 2254(d).

III.     Claim Three: Denial of *Pitchess* Motion(s)

Petitioner claims that her rights were violated by the trial court's denial of her motions under Pitchess v. Superior Court, 11 Cal.3d 531 (1974), for in camera review of law enforcement personnel records.  She alleges as follows.  The information sought would have proved falsified reports and excessive force.  The police reports regarding the crime contained falsehoods: petitioner's husband never said she had stabbed him, and petitioner had defensive wounds.  Excessive force was used against petitioner in retaliation for incidents that preceded this case.  The undisclosed Pitchess material would have allowed petitioner to impeach Officer Lorman, which would have changed the outcome of the trial.  ECF No. 7 at 11-12.

Errors of state law provide no basis for federal habeas relief.  Pulley v. Harris, 465 U.S. 37 (1984).  This claim is based entirely on the alleged improper application of the Pritchess standard, which is a state law matter.  Petitioner alleges no violation of a federal right.  ECF No. 7 at 11-12.  The California Court of Appeal analyzed the issue exclusively as one of state law and affirmed, finding that petitioner had not established good cause within the meaning of Pitchess.  ECF No. 66-15 at 33-36.  Because this claim presents no cognizable basis for federal habeas relief, it must be summarily denied.

////

---

[5]  Petitioner's statement to Officer Lorman that "[s]omebody else was involved in this shit" did not reasonably require the collection of DNA samples from the motel room.

IV.     Claim Four: Denial of New Trial on Grounds of Judicial and Prosecutorial Misconduct

A.     Petitioner's Allegations

Petitioner alleges that her due process rights were violated by the trial judge's partiality and prejudice toward her, demonstrated by his commission of Griffin error in front of the jury, making disparaging remarks about her in front of the jury, and permitting the prosecutor to improperly introduce new theories of guilt and argue facts not in evidence.  The prosecutor violated petitioner's rights by "sandbagging," arguing facts not in evidence, accusing petitioner of fabricating her defense, and improperly arguing the jury should convict to protect the community. ECF No. 7 at 14-15.

B.     The Clearly Established Federal Law

1.     Judicial Bias and Griffin Error

Due process requires a fair trial in a fair tribunal.  In re Murchison, 349 U.S. 133, 136 (1955).  This includes a judge with no actual bias against the defendant or interest in the outcome of the case.  Bracy v. Gramley, 520 U.S. 899, 904-05 (1997).  Judicial rulings alone almost never establish bias; a significant "extrajudicial source" factor must be present.  Liteky v. United States, 510 U.S. 540, 555 (1994).  To prevail on a claim of judicial bias, a petitioner must present facts sufficient to "overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47 (1975).  There is no constitutional violation without a showing of facts that objectively demonstrate a serious risk of actual bias.  See Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 883-84 (2009).

In Griffin v. California, 380 U.S. 609, 615 (1965), the Supreme Court held that the Fifth Amendment prohibits comment on a criminal defendant's silence as a circumstance implying guilt.  An accused has a constitutional right not to offer any explanation, and this right is violated when the fact of his silence is tendered to the jury as a fact for their consideration.  Id. at 613-614.

2.     Prosecutorial Misconduct

In reviewing prosecutorial misconduct claims, "[t]he relevant question is whether the prosecutors comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotations

omitted).  "To constitute a due process violation, the prosecutorial misconduct must be of

sufficient significance to result in the denial of the defendant's right to a fair trial."  Greer v.

Miller, 483 U.S. 756, 765 (1987).  "[T]he touchstone of due process analysis in cases of alleged

prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith

v. Phillips, 455 U.S. 209, 219 (1982).  "[I]t is not enough that the prosecutor's remarks were

undesirable or even universally condemned."  Darden, 477 U.S. at 181.

        C.  The State Court's Ruling

        This claim was presented on direct review, and the opinion of the California Court of

Appeal is the state court decision subject to review.  See Ortiz, 704 F.3d at 1034.  The appellate

court ruled in pertinent part as follows:

> *Alleged Judicial Misconduct*
>
> We reject defendant's claim that the trial court committed Griffin
> error when it cautioned her during closing argument with the
> following: "You are turning your argument into testimony. You
> chose not to testify. Please simply say to the jury you believe that
> the evidence shows whatever you believe it to show."
>
> The Supreme Court in *Griffin, supra*, 380 U.S. at page 615, held
> that the Fifth Amendment to the United States Constitution forbids
> "either comment by the prosecution on the accused's silence or
> instructions by the court that such silence is evidence of guilt." (Fn.
> omitted.)  Here, the trial court did not instruct the jury that
> defendant's decision not to testify evidenced her guilt. Rather, the
> court properly noted that closing argument was defendant's
> opportunity to comment on the evidence as presented and was not
> appropriate for presenting new testimonial evidence to the jury as
> defendant was attempting to do. (*People v. Medina* (1995) 11
> Cal.4th 694, 755 [*Griffin* rule prohibiting comment on defendant's
> silence does not extend to comments on the state of the evidence].)
>
> The court, moreover, instructed the jury based on CALCRIM No.
> 355 that defendant had an absolute constitutional right not to testify.
> It further instructed that the jury could not consider, for any reason
> at all, the fact that defendant did not testify, that it could not discuss
> the fact that defendant did not testify during deliberations, and that
> it could not let that fact influence the jury's decision in any way.
> *Griffin* error did not occur.
>
> Defendant's argument that the court improperly restricted her from
> eliciting a motive for why the police failed to collect DNA evidence
> from the scene is equally unavailing. While she cites to various
> portions of the record where at times the court sustained objections
> to or otherwise corrected the form of her questions, she fails to
> explain in any meaningful way how the court's evidentiary rulings

were improper.

In any event, the record shows defendant questioned both Officer Lorman and Chief Fitch about the reasons why blood was not collected. In fact, the court overruled the prosecutor's objection when defendant asked Officer Lorman why – if the victim did not tell him that defendant had stabbed him, and she said that someone else was involved – he did not go back and collect the blood from the scene. Officer Lorman was then permitted to explain his reasons for not collecting any of the blood. During cross-examination, Chief Fitch admitted that he said he had researched defendant and the victim, and that they were a "pain in the ass." Defendant used this testimony to imply in argument that law enforcement's dislike of defendant and the victim motivated them not to collect the blood.

We similarly reject defendant's claim that the court improperly denied her attempt to impeach Officer Lorman. The court properly sustained a relevance objection to defendant's argumentative question about whether Officer Lorman had ever had any complaints filed against him for "being a generally incompetent police officer," (*People v. Chatman* (2006) 38 Cal.4th 344, 384 ["[a]n argumentative question is a speech to the jury masquerading as a question. The questioner is not seeking to elicit relevant testimony."]) and whether he "often writes false reports?" (Ibid. ["An argumentative question that essentially talks past the witness, and makes an argument to the jury, is improper because it does not seek to elicit relevant, competent testimony, or often any testimony at all."])

When defendant questioned why Officer Lorman had written in some unidentified report (which she did not present) that the victim had told him defendant had stabbed him, even though Lorman testified to the contrary, Lorman testified that he had never written that in his report. From subsequent questions, it appears defendant was referring to a probable cause statement supporting an emergency protective order issued to protect the victim from defendant, and Officer Lorman testified that he did not write the probable cause statement for the protective order. Thus, defendant's attempt to impeach Officer Lorman failed not because the trial court improperly restricted her questioning, but because she was mistaken as to who wrote the protective order.

*Alleged Prosecutorial Misconduct*

" 'A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process.' " (*People v. Tafoya* (2007) 42 Cal.4th 147, 176 (*Tafoya*).) " 'Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under [California] law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.' " (*Ibid.*)

"Generally, a claim of prosecutorial misconduct is not reviewable on appeal unless the defendant makes a timely objection and asks

23

the trial court to admonish the jury to disregard the prosecutor's improper remarks." (*Tafoya, supra*, 42 Cal.4th at p. 176.)

Where the defendant failed to object, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct. (*Ibid.*)

Defendant contends that the prosecutor committed misconduct during closing by arguing facts not in evidence and essentially offering unsworn testimony not subject to cross-examination, but she includes only a bare citation to a single page of transcript without specifying the supposedly impermissible argument. To the extent defendant complains that the prosecutor said, "He [(the victim)] was in the room. His blood is all over the room. He was out the door too. He may have been out the window at some point during the day. They were arguing for a long time," she did not object to the statements and has forfeited her challenges. (*People v. Tafoya, supra*, 42 Cal.4th at p. 176.)

In any event, we understand the prosecutor's statements that the victim "was in the room," that "[h]is blood was all over the room," and that he was "out the door" to be nothing more than reasonable inferences drawn from the evidence showing that the victim went into the motel room, that he was stabbed in the motel bathroom, and that he was bleeding from his wound. From such evidence, it could be inferred that at some point, the victim may have bled in the motel room or near the door even though he denied it. (*Tafoya, supra*, 42 Cal.4th at p. 181 [counsel is accorded great latitude at argument to urge whatever conclusions counsel believes can properly be drawn from the evidence].) Whether the inferences drawn by the prosecutor were reasonable was for the jury to decide. (Ibid.)

The urged inferences fit squarely within the confines of the prosecutor's overarching argument explaining why the victim told police he did not know who stabbed him even though the evidence and reasonable inferences from the evidence were contrary to that statement. No misconduct occurred.

We likewise reject defendant's contention that the prosecutor introduced "a theory of legal culpability for the first time in closing argument" or "sandbagged" her during rebuttal. On the record pages she cites to support her argument (without providing any reasoned analysis), it does not appear she ever objected on that basis, [footnote omitted] and has therefore forfeited the challenges. (*Tafoya, supra*, 42 Cal.4th at p. 176.) Regardless, the transcript reveals the prosecutor legitimately questioned differences between defendant's response when police arrived and her claim that someone else was responsible for stabbing the victim, drew reasonable inferences to show the blood on the wall may have been the victim's, and questioned how someone else's blood might have gotten in the room as defendant claimed, given that the knife used to cut the victim was found in the bathroom. None of these comments introduced a new theory of liability or sandbagged her.

1

2

3

4

5

6

7

8

9

> Defendant further complains that the prosecutor implied she fabricated her defense. Yet, given the wide latitude prosecutors have for commenting on the evidence, implying that defendant's version of events was inaccurate or unreasonable was not misconduct. The unobjected-to comments were all based on the evidence and reasonable inferences from the evidence and came within the broad scope of permissible argument. (*People v. Chatman, supra*, 38 Cal.4th at p. 387 [prosecutor's comments at various times during closing that the defendant had lied constituted fair comment on the evidence].)
>
> Defendant never objected to the prosecutor's comment that people who stab others are dangerous and should be punished even if the victim, for various reasons, does not want to cooperate with the prosecution. Any contention that the prosecutor's comment improperly urged jurors to convict her to protect the community is therefore forfeited. (*Tafoya, supra*, 42 Cal.4th at p. 176.)

10    ECF No. 66-15 at 37-41.

11        D.  Objective Unreasonableness Under § 2254(d)

12            1.  Judicial Bias

13        The state court reasonably found that there had been no Griffin error.  The trial judge did

14    not comment on petitioner's silence as an indication of guilt, as Griffin forbids.  See 380 U.S. at

15    615.  Rather, it commented on the difference between argument and testimony.  Neither was the

16    statement "of such a character that the jury would naturally and necessarily take it to be a

17    comment on the failure to testify."  Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987) (emphasis

18    added).  The California caselaw on which the appellate court relied in evaluating the remark is

19    fully consistent with federal law.  Compare People v. Medina, 11 Cal.4th 694, 755 (1995) (Griffin

20    prohibits comment on defendant's silence, not comments on the state of the evidence), United

21    States v. Mayans, 17 F.3d 1174, 1185 (9th Cir. 1994) (same).

22        This is not a case in which the defendant's silence was tendered to the jury for its

23    consideration, which is the constitutional wrong Griffin addresses.  There is no likelihood that the

24    jury understood the judge's comment to be anything but a clarification to the pro se defendant

25    about the bounds of permissible argument and the distinction between argument and evidence.

26    The jury was properly instructed on that point, and on the principle that a defendant's failure to

27    testify may not be considered in reaching a verdict.  The jury is presumed to have followed these

28    instructions.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000).  There was no unreasonable

1  application of Griffin.

2          The state court's resolution of the alleged non-constitutional errors need not be evaluated

3  here, as petitioner cannot prove judicial bias on the basis of adverse rulings alone.  See Liteky,

4  510 U.S. at 555.  Even if the trial court had erred—and as to state law issues this court must

5  accept the state appellate court's ruling that it did not—petitioner cannot state a cognizable

6  judicial bias claim without facts indicating the influence of an extrajudicial factor on the court's

7  rulings.  Id.  Because there are no such facts, this claim must be summarily denied.

8                  2.  Prosecutorial Misconduct

9          The Court of Appeal stated the correct due process standard and applied it reasonably.

10  None of the prosecutor's identified statements exceeded the bounds of permissible argument.

11  There was nothing unreasonable in the conclusion that petitioner's trial was not so infected by

12  misconduct that the trial as a whole was rendered fundamentally unfair.

13      V.      Claim Five: Insufficient Evidence to Support Convictions

14              A.  Petitioner's Allegations

15          Petitioner alleges that there was not enough evidence to convict her because her husband

16  never identified who stabbed him.  ECF No. 7 at 17.

17              B.  The Clearly Established Federal Law

18          Due process requires that each essential element of a criminal offense be proven beyond a

19  reasonable doubt.  United States v. Winship, 397 U.S. 358, 364 (1970).  In reviewing the

20  sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in

21  the light most favorable to the prosecution, any rational trier of fact could have found the essential

22  elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319

23  (1974).  If the evidence supports conflicting inferences, the reviewing court must presume "that

24  the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer

25  to that resolution."  Id. at 326.  "A reviewing court may set aside the jury's verdict on the ground

26  of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos

27  v. Smith, 565 U.S. 1, 2 (2011).

28  ////

1

C. The State Court's Ruling

2

This claim was presented on direct review, and the opinion of the California Court of

3

Appeal is the state court decision subject to review.  See Ortiz, 704 F.3d at 1034.  The appellate

4

court ruled in pertinent part as follows:

5

6

> Defendant contends insufficient evidence supports her convictions
> for assault with a deadly weapon and corporal injury on a spouse,
> and that insufficient evidence shows she used a deadly weapon or
> inflicted great bodily injury during the offenses. In her view, the
> trial court should have granted a new trial motion because the jury
> was mistaken about the facts. We disagree with her view of the
> evidence, and conclude that substantial evidence supports her
> convictions and the enhancements.

7

8

9

10

> When determining whether there is substantial evidence to support
> a conviction, we view the record in the light most favorable to the
> People, resolving all conflicts in the evidence and drawing all
> reasonable inferences to support the conviction. (*People v.
> Campbell* (1994) 25 Cal.App.4th 402, 408; *People v. Small* (1988)
> 205 Cal.App.3d 319, 325 ["The substantial evidence rule is
> generous to the respondent on appeal . . ."].) " 'We may conclude
> that there is no substantial evidence in support of conviction only if
> it can be said that on the evidence presented no reasonable fact
> finder could find the defendant guilty on the theory presented.' "
> (*Campbell*, at p. 408.)

11

12

13

14

15

16

> To prove defendant was guilty of assault with a deadly weapon, the
> prosecutor had to show beyond a reasonable doubt that defendant
> did an act with a deadly weapon that by its nature would directly
> and probably result in the application of force to a person, that the
> force used was likely to produce great bodily injury, that she did the
> act willfully, that when she acted she was aware of facts that would
> lead a reasonable person to realize that her act by its nature would
> directly and probably result in the application of force to someone,
> that she had the present ability to apply force with a deadly weapon
> to a person, and that she did not act in self-defense or defense of
> another. (§ 245, subd. (a)(1); CALCRIM No. 875.) A deadly
> weapon other than a firearm included "any object, instrument, or
> weapon . . . that is inherently deadly or one . . . that is used in such
> a way that it is capable of causing and likely to cause death or great
> bodily injury." (CALCRIM No. 875.) And, great bodily injury
> meant a "significant or substantial physical injury"; one that was
> greater than minor or moderate harm. (CALCRIM No. 875.)

17

18

19

20

21

22

23

24

25

> To prove defendant was guilty of the corporal injury offense, the
> prosecutor had to show beyond a reasonable doubt that defendant
> willfully and unlawfully inflicted a physical injury on her spouse
> resulting in a traumatic condition and that she did not act in lawful
> self-defense. (§ 273.5, subd. (a); CALCRIM No. 840.)

26

27

> To prove defendant guilty of the great bodily injury enhancement,
> the prosecutor had to show that defendant applied substantial force

28

to the victim that resulted in a significant or substantial physical injury and one that was greater than minor or moderate harm. (§ 12022.7; CALCRIM No. 3160.) For the personal use of a deadly weapon enhancement, the prosecutor had to prove that defendant intentionally displayed the weapon in a menacing manner or hit someone with the weapon. (§ 12022, subd. (b)(1); CALCRIM No. 3145.)

Viewing the evidence in the light most favorable to herself, and contrary to the governing standard of review, defendant argues insufficient evidence supports the jury's guilty verdicts because the victim told responding officers that he did not see who stabbed him, said he escaped through the bathroom window and did not return to the motel room, and denied that the blood in the room was his. She also notes that the victim denied telling the nurse that defendant stabbed him, that Officer Lorman said the blood in the motel room could have been someone else's, and that the motel manager testified a woman banged on her office door for help.

When viewed properly--in the light most favorable to the judgment – ample evidence and reasonable inferences from such evidence support the convictions and the enhancements. The jury heard a 911 call made by defendant in which she identifies herself as "Storm," states that she is in room 109 at the Colusa Motel, and says that she was about to stab her husband because he would not stop knocking on the window to be let into the room. When Officer Lorman responded to the call, he observed defendant in room 109 at the Colusa Motel and noticed that she had a hunting knife with a fixed blade in a sheath in her waistband. When Officer Lorman returned the second time to the Colusa Motel in response to a report of a wounded man, he located the victim who had been stabbed in the arm and was bleeding. The victim initially said that Storm had stabbed him, and he later testified that only he and defendant were in the motel room immediately preceding the stabbing.

After entering the motel room, Officer Lorman observed defendant feigning to be asleep on the bed covered in blood; the room was destroyed, and blood was everywhere. The knife he had seen her with earlier was no longer in the sheath on her belt. The knife blade was later located in the bathroom, and the handle of the knife was in the motel room; the broken knife matched defendant's knife sheath.

Both the emergency room physician who treated the victim and the nurse who escorted him from the hospital upon discharge testified that he said his wife had stabbed him.

From this evidence, the jury could reasonably conclude that defendant was known by the nickname Storm, that defendant called 911 threatening to stab her husband, that she had a hunting knife on her capable of making the type of injury the husband suffered, and that shortly after the 911 call, the husband told Officer Lorman that someone named Storm stabbed him through the bathroom door. The jury could also reasonably conclude that no one else was in the room besides defendant and the husband at the time of the stabbing,

and defendant used her own knife to stab her husband through the bathroom door during the attack.

While the victim later denied knowing who stabbed him and said he did not tell the nurse that defendant had stabbed him, the jury was free to disregard his denials as not credible. (*People v. Jones* (1990) 51 Cal.3d 294, 314 [it is the exclusive province of the jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends].) As the jury was properly instructed, it alone judged the credibility or believability of witnesses (CALCRIM No. 226) and was tasked with resolving conflicts in the evidence by deciding which evidence to believe (CALCRIM No. 302). That the jury rejected the victim's denials and resolved the conflicting evidence against defendant does not mean insufficient evidence supports the guilty verdicts or the true findings on the enhancement allegations, or that the trial court erred in denying her new trial motion based on insufficient evidence.

ECF No. 66-15 at 41-44.

### D.   Objective Unreasonableness Under § 2254(d)

The California Court of Appeal applied the standard required under the due process clause, and it did so reasonably.  The appellate court was not merely allowed but required to draw all permissible inferences from the evidence in favor of the prosecution.  See Jackson, 443 U.S. at 319, 326.  Petitioner disagrees with the jury's credibility assessments and evaluation of the evidence, but this is far from a case in which "no rational trier of fact could have agreed with the jury." Cavazos, 565 U.S. at 2.  The undersigned finds nothing objectively unreasonable about the state court's evaluation of the evidence and its sufficiency.  Particularly in light of the "double dose of deference" to the verdict that is required under the Due Process Clause and the AEDPA, Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011), federal habeas relief is unavailable.

VI.   Claim Six: Admission of Butte County Domestic Violence Evidence

Petitioner alleges that various of her federal constitutional rights were violated by the trial court's failure to exclude evidence of petitioner's Butte County act of domestic violence on grounds that the prosecutor violated the 30-day discovery notice requirement of Cal. Evid. Code § 1109.[6]  The trial court denied the motion for discovery sanctions even though plaintiff did not

---

[6]  This section provides for the admission of other acts evidence in domestic violence cases.  Any such evidence must be disclosed to the defense pursuant to the criminal discovery rules, which require production at least 30 days before trial in most cases.  Cal. Evid. Code § 1109(b); Cal. Penal Code § 1054.7.

1   receive notice that the Butte County incident would be used until four days before the Colusa

2   County trial.  The prosecutor had misled petitioner into thinking he would not use this evidence.

3   The statements that petitioner's husband had made related to the Butte County incident were

4   involuntary, coerced, and untrue.  ECF No. 7 at 18-19.

5          The admission of evidence is governed by state law, and habeas relief does not lie for

6   errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  Accordingly, violations of the

7   California criminal discovery rules provide no basis for federal habeas relief.[7]  Petitioner cannot

8   transform her state law issue into a federal claim merely by citing a provision of the U.S.

9   Constitution.  See Langford v. Day, 110 F.3d 1380, 1380 (9th Cir.), cert. denied, 522 U.S. 881

10  (1997).  Petitioner presents no legal or factual basis for her challenge to the Butte County

11  evidence other than the statutory one.  Accordingly, Claim Six presents no cognizable basis for

12  federal relief and must be summarily denied.

13      VII.    Claim Seven: Improper Jury Instructions

14              A.  Petitioner's Allegations

15         Petitioner alleges that the jury instructions given by the trial court misstated the law and

16  lowered the prosecution's burden of proof, violating right to a fair trial.  ECF No. 7 at 20-21.

17              B.  The Clearly Established Federal Law

18         Erroneous jury instructions do not support federal habeas relief unless the infirm

19  instruction so infected the entire trial that the resulting conviction violates due process.  Estelle,

20  502 U.S. at 72; Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (it must be established not

21  merely that the instruction is undesirable, erroneous, or even universally condemned, but that it

22  violated some constitutional right).  The challenged instruction may not be judged in artificial

23  isolation, but must be considered in the context of the instructions as a whole and the trial record

24  overall.  Estelle, 502 U.S. at 72.  Moreover, relief is only available if there is a reasonable

25  likelihood that the jury has applied the challenged instruction in a way that violates the

26  Constitution.  Id. at 72-73.

27  _____

28  [7]  The California Court of Appeal fully considered the matters raised here under the applicable
principles of state law, and found no error.  ECF No. 66-15 at 44-49.

1    C.  The State Court's Ruling

2         This claim was presented on direct review, and the opinion of the California Court of

3    Appeal is the state court decision subject to review.  See Ortiz, 704 F.3d at 1034.  The appellate

4    court ruled in pertinent part as follows:

5              Defendant first argues that the court erred by instructing the jury
              that the People were not required to prove motive, claiming it
6              lightened the prosecutor's burden of proof. The court instructed the
              jury with the CALCRIM No. 370, the pattern jury instruction on
7              motive. That instruction provides: "The People are not required to
              prove that the defendant had a motive to commit (any of the crimes)
8              charged. In reaching your verdict you may, however, consider
              whether the defendant had a motive. [¶] Having a motive may be a
9              factor tending to show that the defendant is guilty. Not having a
              motive may be a factor tending to show the defendant is not guilty."
10
              CALCRIM No. 370 is a correct statement of the law. (People v.
11             Hillhouse (2002) 27 Cal.4th 469, 504 [recognizing motive and
              intent are not synonymous, and that motive generally is not an
12             element of a crime].) Because motive was not an element of any of
              the charged crimes (§§ 245, subd. (a)(1), 273.5, subd. (a), 594,
13             subd. (b)), the trial court did not err by instructing the jury that the
              prosecutor was not required to prove defendant had a motive to
14             commit any of the offenses.

15             Defendant next contends the court's instruction for the assault with
              a deadly weapon offense was erroneous. In her view, the court erred
16             in instructing the jury that the prosecutor had to prove the elements
              of the offense, but also that the People were not required to prove
17             that she actually intended to use force against someone when she
              acted, again claiming the instruction as given improperly lightened
18             the People's burden of proof.

19             The court instructed the jury with CALCRIM No. 875, [footnote
              omitted] the pattern jury instruction for assault with a deadly
20             weapon. The portion of which defendant complains – that the
              prosecutor need not prove defendant actually intended to use force
21             – is a correct statement of the law and does not impermissibly
              lessen the burden of proof. "[B]ecause assault requires only that the
22             perpetrator act 'willfully,' i.e., with 'a purpose or willingness to
              commit the act' without 'any intent to . . . injure another' (Pen.
23             Code, § 7, subd. 1), it was appropriate to advise the jury the
              prosecution need not prove defendant harbored an intent to use
24             force against another." (People v. Flores (2007) 157 Cal.App.4th
              216, 220.)
25
              We reject defendant's argument, asserted without reasoned
26             analysis, that CALCRIM No. 875 as given required the jury to
              presume an element of the offense. As set forth in the footnote, the
27             text of CALCRIM No. 875 makes clear that the court did not
              instruct the jury to presume anything. (CALCRIM No. 875.)
28

31

We likewise reject defendant's argument that the court unnecessarily repeated the instructions regarding the meaning of "applied force," "application of force," "deadly weapon," and "great bodily injury," thereby improperly emphasizing those terms for the jury. At the outset, we note that the court instructed the jury that to the extent any instructions were repeated, the court did not intend to emphasize any particular instruction. We presume the jury followed the court's instruction. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 [jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions].)

The court, moreover, was required to instruct the jury that "applied force" and "application of force" meant "to touch in a harmful or offensive manner" for both the assault with a deadly weapon offense and the lesser included offense of simple assault. (*Breverman, supra,* 19 Cal.4th at p. 154 [duty to instruct on general principles of law applicable to case includes obligation to instruct on lesser included offenses when evidence raises question of whether all elements of charged offense were present]; *Cummings, supra,* 4 Cal.4th at p. 1311 [court obligated to instruct on all elements of a charged offense].) Similarly, use of a "deadly weapon" was an element of both the assault with a deadly weapon offense (§ 245, subd. (a)(1)) as well as the deadly weapon enhancement (§ 12022, subd. (b)(1)), which was attached to the domestic violence offense. As for the phrase "great bodily injury," that definition applied to both the deadly weapon enhancement under section 12022, subdivision (b)(1) (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029 ["'a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury' "]) as well as the great bodily injury enhancement under section 12022.7 (§ 12022.7, subd. (a) ["Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."].)

To the extent defendant claims the court incorrectly stated the law, she fails to articulate what law the court purportedly misstated. Although she cites to a portion of the record in which the court instructed on the corpus delicti rule pursuant to CALCRIM No. 359,[footnote omitted] which she expressly requested that the court give (*People v. Wader* (1993) 5 Cal.4th 610, 657-658 [when defense counsel deliberately requests a particular instruction the invited error doctrine bars an argument on appeal that the instruction was erroneous]), she does not explain how she believes the court's instruction was improper. "As this contention is perfunctorily asserted without any analysis or argument in support, we reject it as not properly raised." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1107, fn. 37; *see Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 ["We need not consider an argument for which no authority is furnished."]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to

32

authority, we treat the point as waived."].)

In any event, in every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself (the fact of injury, loss or harm), and the existence of a criminal agency as its cause (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168), and the court must so instruct the jury (id. at p. 1178 [recognizing that California decisions have required a jury instruction against exclusive reliance on a defendant's out-of-court statements to prove an offense, requiring proof of the corpus delicti]; CALCRIM No. 359). The court's instruction regarding the corpus delicti rule was thus proper.

Defendant's argument that the court should not have instructed the jury on intent because the instruction was not supported by the evidence and was irrelevant is without merit. As far as we can discern, given defendant's repeated denials of culpability, she appears to argue that no evidence showed she intended to stab her husband, and, therefore, the court should not have instructed the jury on intent because it was irrelevant. Not so.

Both assault with a deadly weapon and infliction of corporal injury on a spouse are general intent crimes. (*People v. Williams* (2001) 26 Cal.4th 779, 788 [reaffirming that assault is a general intent crime]; *People v. Thurston* (1999) 71 Cal.App.4th 1050, 1055 [corporal injury offense requires general criminal intent].) The trial court therefore properly instructed the jury with CALCRIM No. 250, which provides: "The crimes or other allegations charged in this case require proof of the union, or joint operation, of act and wrongful intent. [¶] For you to find a person guilty of the crimes in this case of Assault with a Deadly Weapon, as charged in Count I and Corporal Injury To [a] Spouse, as charged in Count II true, that person must not only commit the prohibited act or fail to do the required act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act or fails to do a required act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime[]."…

… Because the trial court did not misinstruct the jury, defendant's constitutional rights were not violated.

ECF No. 66-15 at 50-55.

### D.  Objective Unreasonableness Under § 2254(d)

The elements of criminal offenses and the meaning of statutory terms are set by state law, and the Court of Appeal's rulings on state law issues are binding on this court.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam).  Given the substantive criminal law as set forth by the state courts, nothing in the identified jury instructions can plausibly be construed as reducing the prosecutor's burden of proof or otherwise implicating petitioner's constitutional rights.

33

1    Accordingly, relief is unavailable.

2        VIII.    Claim Eight: Denial of Defense Expert Witness

3            A.    Petitioner's Allegations

4        Plaintiff alleges that her rights were violated by denial of her motion for an appointed

5    defense expert in neurology and psychology to examine her husband for mental illness relevant to

6    her defense.  An expert was necessary to show that when petitioner's husband failed to take his

7    medication, he hallucinated and misperceived things.  Her husband had a neurologist testify on

8    his behalf at a trial in 1997, regarding the effects of his psychosis.  Because the victim was not

9    taking his medication at the time of the incident, expert testimony would have negated the

10   charges against petitioner.  ECF No. 7 at 22.

11           B.    The Clearly Established Federal Law

12       The Constitution guarantees to criminal defendants the right to present a defense.

13   Chambers v. Mississippi, 410 U.S. 284 (1973); Crane v. Kentucky, 476 U.S. 683, 690 (1986).

14   When an indigent criminal defendant demonstrates that her own sanity at the time of the offense

15   is to be a significant fact at trial, she is entitled to the appointment of a defense mental health

16   expert.  Ake v. Oklahoma, 470 U. S. 68, 83 (1985); McWilliams v. Dunn, 582 U.S. 183 (2017).

17   Outside this context, however, the U.S. Supreme Court has not clearly established a constitutional

18   right to the appointment of defense experts.  Indeed, the Supreme Court has expressly declined to

19   decide whether indigent criminal defendants have a constitutional right to investigative and

20   ancillary services.  See Caldwell v. Mississippi, 472 U.S. 320, 323 n. 1 (1985).

21           C.    The State Court's Ruling

22       This claim was presented on direct review, and the opinion of the California Court of

23   Appeal is the state court decision subject to review.  See Ortiz, 704 F.3d at 1034.  The appellate

24   court ruled in pertinent part as follows:

25           In general, a represented defendant has the federal and state
             constitutional right to the effective assistance of counsel. (See
26           People v. Clark (2016) 63 Cal.4th 522, 630 [federal and state
             constitutional right to counsel includes the right to effective
27           counsel].) This right, in turn, includes the right to reasonably
             necessary defense services. (Ibid.)
28

                                      34

A self-represented defendant is not entitled to special treatment not afforded a defendant represented by counsel. (*People v. Faxel* (1979) 91 Cal.App.3d 327, 330.) Thus, a defendant who represents himself must also show that any ancillary services, such as public payment for an investigator or expert, are reasonably necessary to prepare a defense. (*Ibid.* [trial court properly denied self-represented defendant's motion for appointment of an investigator and runner where the defendant failed to show the services were reasonably necessary for his defense].)

Evidence Code section 730 governs court-appointed experts at public expense. The statute provides in relevant part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." While section 730 provides for court appointed experts under certain circumstances, the "statute does not grant a defendant in a criminal case an absolute right to the appointment of an expert on his behalf but is a matter discretionary with the court." (*People v. Vatelli* (1971) 15 Cal.App.3d 54, 61; see *People v. Clark, supra*, 63 Cal.4th at pp. 630-631 [in a capital case, appellate court reviews a trial court's ruling on an application for authorization to incur expenses to prepare or present a defense for abuse of discretion].)

We conclude the trial court did not abuse its discretion in denying defendant's application for funds to retain an expert in neurology and psychology to examine the victim. Defendant conceded that she was aware of a previous doctor who had examined or treated the victim for those same issues. Thus, as the court noted, defendant could subpoena that doctor to testify on her behalf, making appointment of a new expert not reasonably necessary. The fact that defendant chose not to subpoena the doctor was a strategic decision she was entitled to make while representing herself.

In any event, defendant has not shown that she was prejudiced by the lack of an expert. (*People v. Daniels* (1991) 52 Cal.3d 815, 850-851 [finding the defendant was not prejudiced by trial court's improper denial of his request for funds to conduct a public opinion survey about the community knowledge and attitudes about his trial to determine whether he could get a fair trial in that county for a change of venue motion].) Defendant made no showing that the victim's mental health or brain damage problems required technical expertise to understand. (*Collins v. Superior Court* (1977) 74 Cal.App.3d 47, 52 [bare assertion that expert was necessary to evaluate information communicated from petitioners in a dependency proceeding as to how child was injured insufficient to require appointment of expert].) Indeed, nothing in the nature of the victim's trial testimony shows it was particularly confusing or highly technical which would have required an expert explanation to enable the jury to comprehend it.

1

2

3

4

5

> The victim testified that he suffered brain damage and mental illness, that he did not take his prescribed medication on the day of the stabbing, and that when he did not take his medication he hallucinated and perceived things that actually did not happen. Based on this testimony, defendant was able to fully present her defense to the jury that even if the victim said she stabbed him, because of his brain damage and mental illness, his perception was incorrect.

6 ECF No. 56-58.

7     D.  Objective Unreasonableness Under § 2254(d)

8          The state court's resolution of this claim involved no objectively unreasonable application

9 of federal law.  Petitioner failed to meet the California statutory requirements for appointment of

10 an expert at public expense, a ruling which is not reviewable here.  Petitioner has not stated a

11 prima facie constitutional claim because her ability to present her defense theory was not

12 impaired by the denial of court appointed expert.  She introduced evidence, through her husband,

13 that his mental health problems caused him to misperceive reality.  The jury was thus able to

14 consider her theory that any statements he may have made identifying petitioner as his attacker

15 were unreliable due to his mental impairments.  The jury rejected that theory after being

16 instructed on the factors relevant to witness credibility and after considering all the evidence.

17 This claim must be denied.

18     IX.    Claim Nine: Unconstitutional Assessment of Fines, Fees and Assessments

19     A.  Petitioner's Allegations

20          Petitioner alleges that monetary penalties were imposed without a finding that she had the

21 ability to pay, in violation of her federal constitutional rights.  The trial court "imposed restitution

22 fines, domestic violence fines, court operations, and court security fees without making a

23 determination that I could pay them."  The trial court also erred by imposing a "direct order

24 payment" related to the motel without any evidence that the motel suffered a loss.[8]  Petitioner was

25 unfairly "double-fine[d]" for separate counts.  ECF No. 7 at 23.[9]

26 ──────────────

27 [8]  The undersigned infers that this allegation relates to restitution on the vandalism charge, based on damage to the motel room.

28 [9]  The petition does not specify the financial obligations at issue.  The state appellate court summarized the obligations imposed at 66-15, pp. 58-59.

1    B.  The Clearly Established Federal Law

2    The Eighth Amendment prohibits, among other things, the imposition of excessive fines.

3    The excessive fines clause limits government's power to extract payments as punishment for an

4    offense; it does not apply to payments that are not punitive in nature.  United States v. Bajakajian,

5    524 U.S. 321, 328 (1998).   "The touchstone of the constitutional inquiry under the Excessive

6    Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some

7    relationship to the gravity of the offense that it is designed to punish. [Citations.] . . . [A] punitive

8    forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a

9    defendant's offense."  Id. at 334.

10    C.  The State Court's Ruling

11    The Court of Appeal correctly stated the rule of Bajakajian, supra.  ECF No. 66-15 at 61.

12    The court then ruled as follows:

13    
> Here, we find that the $600 restitution fine imposed for stabbing her
> husband through a bathroom door with a hunting knife and
14    
> destroying a motel room is not grossly disproportional to the level
> of harm and defendant's culpability in this matter. The victim's arm
15    
> was sliced during the attack, and only the bathroom door appears to
> have kept him from greater harm. The societal harm and serious
16    
> danger caused from stabbing one's spouse is readily apparent.
> Accordingly, the $600 restitution fine imposed in this case is not
17    
> excessive under the Eighth Amendment or the California
> Constitution.
18    

19    Id. at 62.[10]

20    D.  Objective Unreasonableness Under § 2254(d)

21    There is nothing objectively unreasonable about the state court's denial of this claim.

22    First, most of the financial obligations that petitioner challenges were mandatory assessments and

23    fees that are clearly not "fines" within the meaning of Bajakajian.  See ECF No. 66-15 at 58-59.

24    Second, as to the punitive fine(s) identified by the state court, it is not unreasonable to find a $600

25    penalty facially proportionate to a stabbing.  Petitioner presents no facts which would support a

26    different proportionality finding.  Third, as to the trial court's alleged failure to assess inability to

27    _____

28    [10]  The imposition of financial penalties without assessment of ability to pay was discussed
exclusively under state law.  Id. at 59-60.

37

1    pay, the excessive fines clause does not prevent the imposition of fines that cause a hardship on

2    the offender.  United States v. Dubose, 146 F.3d 1141, 1146 (9th Cir. 1988).  Petitioner has

3    identified no U.S. Supreme Court authority holding that the imposition of financial penalties (as

4    opposed to incarceration for failure to pay) is unconstitutional where the offender is indigent.

5    The undersigned is aware of no such authority.  Accordingly, § 2254(d) bars relief.

6         X.       Claim Ten: Sentencing Enhancements and Presentence Custody Credits

7            Petitioner alleges that the sentencing court improperly denied her certain custody credits

8    to which she was entitled under state law.  ECF No. 7 at 24.  She also alleges that various

9    sentencing enhancements were erroneously imposed.  Id. at 25-27.  Errors of state law do not

10   come within the scope of federal habeas jurisdiction, Estelle, 502 U.S. at 67, and sentencing is a

11   quintessentially state law matter that is not reviewable in federal habeas.  See Miller v. Vasquez,

12   868 F.2d 1116, 1118-19 (9th Cir. 1989) (question of state sentencing law are not cognizable in

13   federal habeas).  Petitioner cannot transform her state law issues into federal ones merely by

14   invoking the federal constitution.  See Langford, 110 F.3d at 1380.  Accordingly, this claim

15   should be summarily denied.

16        XI.      Claim Eleven: Improper Imposition of Upper Term for Corporal Injury

17           Like Claim Ten, Claim Eleven presents a sentencing issue that is governed exclusively by

18   state law and presents no federal constitutional question.  See Miller, 868 F.2d at 1118-19; see

19   also Langford, 110 F.3d at 1380.  To the extent petitioner contends that the sentencing court

20   violated her Sixth Amendment rights by "engag[ing] in fact finding beyond the facts found by the

21   jury," ECF No. 7 at 28, she appears to invoke the rule of Apprendi v. New Jersey, 530 U.S. 466

22   (2000), which holds that the Constitution precludes a trial court from imposing a sentence above

23   the statutory maximum based on a fact, other than a prior conviction, not found true by a jury.

24   Petitioner was not sentenced above the otherwise applicable statutory maximum, however, so

25   Apprendi does not apply.  Even if petitioner had exhausted an Apprendi claim, it would be

26   subject to summary denial.

27   ////

28   ////

1    XII.    Claim Twelve: Denial of Right to Testify by Ineffective Assistance of Standby

2             Counsel

3             A.   Petitioner's Allegations and Pertinent State Court Record

4         Petitioner alleges that she had every intention of testifying on her own behalf, and did not

5    do so only because her standby counsel told her that something bad would happen if she did.

6    Because of the violence that she had experienced at the hands of officers, and the death threats

7    against herself and her husband, she feared for their safety.  If she had testified, she would never

8    have been convicted.  ECF No. 7 at 30-32.

9             B.   The Clearly Established Federal Law

10        A criminal defendant has the Sixth Amendment right to conduct her own defense if the

11   right to counsel is knowingly and voluntarily waived.  Faretta v. California, 422 U.S. 806 (1975).

12   Where standby counsel is appointed to assist a self-represented defendant, there is no "no

13   absolute bar on standby counsel's unsolicited participation" as long as the defendant is permitted

14   to present her own case in her own way.  McKaskle v. Wiggins, 465 U.S. 168, 176 (1984).

15        When a criminal defendant is represented by counsel, the Sixth Amendment right to

16   counsel is nonetheless violated if (1) counsel's representation fell below an objective standard of

17   reasonableness, and (2) counsel's deficient performance prejudiced the defense.  Strickland v.

18   Washington, 466 U.S. 668, 692 (1984).

19        Whether represented by counsel or not, the decision whether to testify belongs to the

20   defendant personally.  Jones v. Barnes, 463 U.S. 745, 751 (1983).  A defendant has a

21   constitutional right to testify if she so chooses.  Rock v. Arkansas, 483 U.S. 44, 49 (1987).

22             C.   The State Court's Ruling

23        The state appellate court rejected this claim cursorily, finding the allegation of ineffective

24   assistance of counsel "specious" in light of the fact that petitioner was not being represented by

25   counsel at her own request, and noting that the trial court had no affirmative duty to advise

26   petitioner of her right to testify.  ECF No. 66-15 at 73-74.

27             D.   Objective Unreasonableness Under § 2254(d)

28        The state court's rejection of this claim involved no objectively unreasonable application

39

of clearly established federal law.  There can be no ineffective assistance of counsel claim when

petitioner was not being represented by counsel, and here counsel was serving in a standby

capacity without authority to act on petitioner's behalf.  Even if there had been an attorney-client

relationship, which there was not, counsel does not render ineffective assistance by strongly

advising a defendant not to testify when counsel believes doing so would be a mistake.  This

cannot plausibly amount to objectively unreasonable performance.  Moreover, petitioner's

conclusory assertion of prejudice fails to support a prima facie claim.  In light of the trial record

as a whole, there is no reasonable probability of a different result had petitioner testified that the

stabbing was committed by an unidentified third person.  See Strickland, 466 U.S. at 693-694

(prejudice means a reasonable probability that, but for counsel's errors, the result of the

proceeding would have been different).  The jury was aware of petitioner's third-party perpetrator

theory and rejected it.  Petitioner's testimony on that topic could well have been rejected as not

credible in light of the 911 call and the fact that the knife she had been wearing appeared to be the

weapon used to stab her husband.

To the extent petitioner bases this claim on the theory that the trial court should have

advised her of her right to testify, she identifies no U.S. Supreme Court precedent holding that

such advice is constitutionally required.  The undersigned is aware of none.[11]  Accordingly, there

can have been no unreasonable application of clearly established federal law, and habeas relief is

unavailable.

XIII.   Claim Thirteen: Ineffective Assistance of Appellate Counsel

Petitioner contends that appointed appellate counsel rendered ineffective assistance by

filing a brief pursuant to People v. Wende, 25 Cal.3d 43 (1979).[12]  ECF No. 7 at 33.

A criminal defendant enjoys the constitutional right to effective assistance of counsel on

---

[11]  Rock did not hold that the trial court must make an explicit inquiry into the topic.  It held only that states may not restrict a defendant's right to testify by enacting rules—including those designed to ensure trustworthy testimony—which impinge upon a defendant's right to testify. Rock, 483 U.S. at 55-56.  The Ninth Circuit has expressly held that no advisement is required. United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993).
[12]  A "Wende brief" seeks independently review of the entire record by the appellate court "to determine for itself whether there were any arguable issues."  Wende, 25 Cal.3d at 440.

1    appeal. <u>Evitts v. Lucey</u>, 469 U.S. 387, 391 (1985). The familiar framework of <u>Strickland v.</u>

2    <u>Washington</u>, 466 U.S. 668 (1984), applies to claims of appellate ineffectiveness. <u>Smith v.</u>

3    <u>Robbins</u>, 528 U.S. 259, 285 (2000). To demonstrate prejudice, petitioner must show a reasonable

4    probability that he would have prevailed on appeal absent counsel's alleged errors. <u>Id.</u> at 285-

5    286.

6            Petitioner presented this claim to the California Supreme Court in habeas. ECF No. 66-21

7    at 5. The claim should be denied on the merits, bypassing any procedural default.[13] Appellate

8    counsel has no obligation to raise meritless issues, <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983),

9    and all petitioner's issues are meritless for the reasons explained above. Moreover, petitioner

10   submitted a pro se brief to the California Court of Appeals presenting all her issues, all of which

11   were considered and rejected on the merits. <u>See</u> ECF No. 66-15. Accordingly, petitioner can

12   demonstrate no prejudice from counsel's failure to present the issues. There is no basis for relief.

13           XIV.   <u>Claim Fourteen: Cumulative Error</u>

14           Petitioner alleges that the combined effect of all errors denied her a fair trial. ECF No. 7

15   at 34. Where there are no errors, there is nothing to cumulate. <u>See</u> <u>Mancuso v. Olivarez</u>, 292

16   F.3d 939, 957 (9th Cir. 2002). Moreover, the errors alleged here do not implicate fundamental

17   fairness, either separately or together. Relief is therefore unavailable. <u>See</u> <u>Ybarra v. McDaniel</u>,

18   656 F.3d 984, 1001 (9th Cir. 2011) (petitioner not entitled to relief for cumulative error where

19   trial imperfections do not infect trial with unfairness in violation of due process), <u>cert. denied</u>, 568

20   U.S. 959 (2012). This claim necessarily fails.

21                                  CONCLUSION

22           IT IS HEREBY ORDERED that petitioner's Request for Ruling, ECF No. 76, is

23   GRANTED.

24           For the reasons explained above, IT IS FURTHER RECOMMENDED that the petition for

25   _____

26   [13]  The California Supreme Court denied the petition with citation to state habeas procedural
      rules. ECF No. 66-21 at 1. Claims forfeited in state court on state law grounds may be
27   procedurally defaulted in federal habeas. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
      However, procedurally defaulted claims may be denied on the merits. <u>See</u> <u>Lambrix v. Singletary</u>,
28   520 U.S. 518, 525 (1997); <u>Batchelor v. Cupp</u>, 693 F.2d 859, 864 (9th Cir. 1982).

1   writ of habeas corpus be denied.

2          These findings and recommendations are submitted to the United States District Judge

3   assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

4   after being served with these findings and recommendations, any party may file written

5   objections with the court and serve a copy on all parties.  Such a document should be captioned

6   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

7   he shall also address whether a certificate of appealability should issue and, if so, why and as to

8   which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

9   within fourteen days after service of the objections.  The parties are advised that failure to file

10  objections within the specified time may waive the right to appeal the District Court's order.

11  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12  DATED: December 9, 2024

13

14                                   ALLISON CLAIRE
                                     UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28